# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SCOTT D. DEAN,             )      CASE NO. 4:13-cv-2622
                               )
            PLAINTIFF,   )      JUDGE SARA LIOI
                               )
vs.                        )
                               )      MEMORANDUM OPINION
                               )
                               )
NORFOLK SOUTHERN RAILWAY   )
COMPANY, et al.,             )
                               )
            DEFENDANTS.   )

This matter is before the Court on the motion for summary judgment of defendants (Norfolk Southern Railway Company ("Norfolk Southern") and M.A. Patrick aka Rita Patrick ("Patrick") (collectively "defendants")). (Doc. No. 18 ["Motion"].) Plaintiff has opposed defendants' motion (Doc. No. 21 ["Opp'n"]), and defendants have replied (Doc. No. 25 ["Reply"]). The matter is ripe for decision and, for the reasons that follow, defendants' motion for summary judgment is GRANTED.

## I.  BACKGROUND

The facts of this case are rather straightforward, and the following summary is derived from plaintiff Scott D. Dean's ("plaintiff" or "Dean") complaint,[1] as well as Dean's deposition testimony and affidavits filed by both parties in connection with defendants' motion for summary judgment. Certain facts are discussed in greater detail later in this opinion in the context of the Court's analysis of the pending motion.

---

[1] This case was removed from the Mahoning County Court of Common Pleas by defendants on the basis of

Plaintiff is employed as a locomotive engineer by defendant Norfolk Southern, and has been employed in that capacity for over ten years. (Compl. ¶¶ 1-2.) Patrick was plaintiff's supervisor during the time period relevant to plaintiff's claims, and her title was "Foreman of Engines." (Compl. ¶¶ 4-5.)

This lawsuit arises from a dispute that occurred between plaintiff and Patrick the evening of March 5, 2011. On that day, Dean's work with his locomotive was limited to "yard switching" in Norfolk Southern's Haselton Yard. (Compl. ¶¶ 8-9.) Patrick asked to see Dean's locomotive engineer's certification card in connection with a "supervised ride."[2] There is no dispute that plaintiff did not have his certification card in his possession when Patrick asked to see it.

Patrick and Dean disagreed as to whether plaintiff was required to have his certification card physically in his possession while operating a locomotive in the rail yard, or whether it was sufficient, as plaintiff claims, to simply have his certification card available on the premises. An argument ensued between them,[3] and Patrick told Dean she was going to write him up for a rule violation. (Compl. ¶ 14.) Dean admits that he "wasn't very happy . . . probably unhappy" with Patrick about the situation, and that he swore at her. (Dean Dep. at 341; Compl. ¶ 16; Patrick Aff. ¶ 14.)

Patrick considered plaintiff arguing with her and swearing at her to be an act of insubordination and immediately contacted her supervisor, Jay Marotti ("Marotti"),

---

diversity jurisdiction. (Doc. No. 1 ["Notice of Removal"]; Doc. No. 1-1 [Complaint ["Compl."]].)

[2] A locomotive engineer's certification card reflects the dates on which "supervised rides" are conducted. (Doc. No. 19 [Deposition of Scott Dean ["Dean Dep."]] at 299-300 (All references to page numbers are to the page identification numbers generated by the Court's electronic docketing system.); Doc. No. 18-4 [Affidavit of Marrietta Patrick ["Patrick Aff."]] ¶ 14.)

[3] Jesse Johnson ("Johnson"), a locomotive engineer trainee who witnessed the exchange between Patrick and Dean, characterized it as an "argument." (Doc. No. 18-5 [Affidavit of Jay Marotti—Ex. 1 ["Johnson

about what had transpired. (Patrick Aff. ¶¶ 15, 17.) Marotti and another member of Norfolk Southern management, Nate Gaines, promptly went to the Haselton Yard to investigate "because of the potential seriousness of the matter."[4] (Doc. No. 18-6 [Affidavit of Robert Lewis ["Lewis Aff."]] ¶¶ 9-12; Doc. No. 18-5 [Affidavit of Jay Marotti ["Marotti Aff."]] ¶¶ 9-13.)

When they arrived, Marotti and Gaines talked with and took written statements from Dean, Patrick, and Johnson. (Marotti Aff. ¶¶ 16-18.) During Marotti's meeting with Dean, plaintiff initially refused to give a written statement, and pointed his finger at Marotti, swore at Marotti, and stated that "things would be ugly" if plaintiff lost work over the incident with Patrick. (Marotti Aff. ¶ 19; Dean Dep. at 354.)

That same evening, Marotti reported the outcome of the investigation to his supervisor, Robert Lewis. (Marotti Aff. ¶ 23; Lewis Aff. ¶ 13.) Based on Marotti's report, Lewis concluded that Dean was out of control and had behaved in an insubordinate and aggressive manner toward two members of Norfolk Southern management only hours apart. (Marotti Aff. ¶¶ 23-34; Lewis Aff. ¶¶13-14.) As a consequence, Lewis removed Dean from service pending a formal investigation hearing pursuant to Article 41 of the collective bargaining agreement ("CBA") between Norfolk Southern and the Brotherhood of Locomotive Engineers, of which plaintiff is a member. (Marotti Aff. ¶¶ 24-25; Lewis Aff. ¶¶ 14-15; Dean Dep. at 274-76.)

---

Statement"]] at 233.)

[4] Marotti and Gaines are not defendants in this action.

Pursuant to Article 41 of the CBA,[5] Dean received a written notice regarding the charges against him—conduct unbecoming an employee for threatening actions and hostile and profane statements directed toward Patrick and Marotti—and a date for a formal investigation hearing. (Doc. No. 19-1 [Dean Dep.—Ex 14 ["Notice Letter"]]; Lewis Aff. ¶ 15; Marotti Aff. ¶ 25; CBA at 450.) On the scheduled date, Dean waived his right to a hearing and accepted responsibility for his conduct. (Doc. No. 19-1 [Dean Dep.—Ex. 16, ["Accept. of Resp."]] at 500.) Plaintiff was assessed a 38 day suspension (time served) and waived any appeal under the CBA. (*Id*.) During the time between the incident and plaintiff's acceptance of responsibility and waiver of hearing, plaintiff was represented by his bargaining unit representative, Robert Salyers. (Dean Dep. at 360-64.)

Based on these events, plaintiff asserts six (6) causes of action as follows: Count 1 against Norfolk Southern for negligent supervision of Patrick as plaintiff's supervisor; Count 2 against Norfolk Southern for negligent supervision of Marotti and Gaines with respect to their investigation of a disciplinary matter; Count 3 against Norfolk Southern for gross negligence for failing to properly train and supervise Patrick, Marotti, and Gaines; Count 4 against Patrick for defamation for making and publishing false and misleading statements about plaintiff, and against Norfolk Southern for publishing or republishing such false and misleading statements; (plaintiff's complaint does not contain count 5); Count 6 against Norfolk Southern for intentional infliction of emotional distress by Marotti and Gaines in connection with the investigation and

---

[5] Doc. No. 19-1 [Dean Dep.—Ex. 2 ["CBA"]] at 456-64.)

disciplinary process; and Count 7 against both defendants for punitive damages based on actual malice and ill will against plaintiff. (Compl. ¶¶ 47-80.)

Defendants contend that they are entitled to summary judgment on all counts for at least one of three reasons: (1) plaintiff's claims are preempted by the Railway Labor Act; (2) plaintiff's negligence and intentional infliction of emotional distress claims (Counts 1, 2, 3 and 6) are preempted by the Federal Employer's Liability Act; and (3) even if plaintiff's claims are not preempted, defendants are entitled to summary judgment on the merits under Ohio law.

## II. DISCUSSION

### A.  Governing Law

The claims and issues require consideration of both federal and state law. The Court's analysis of the federal preemption issues is intertwined with the elements of proof of plaintiff's state law claims. Therefore, the Court will first set forth the governing federal and state law, and then, separately perform the federal and state law legal analysis for each claim.

### 1. Summary Judgment Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co.* 536 F. App'x 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

In summary, the district court's review on summary judgment is a threshold inquiry of determining whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may

reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

### 2. The Railway Labor Act

Defendants contend on summary judgment that plaintiff's state law claims are a "minor dispute" preempted by the federal Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. In the railroad industry, disputes between management and labor are governed by the RLA. The RLA divides management-labor disputes into two categories—major and minor. Major disputes concern formation of collective bargaining agreements, and minor disputes concern disputes arising from the application or interpretation of existing collective bargaining agreements. *See Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989) (citing *Eljin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723, 65 S. Ct. 1282, 89 L. Ed. 1886 (1945)).

> A minor dispute in the railroad industry is subject to compulsory and binding arbitration before the National Railroad Adjustment Board . . . or before an adjustment board established by the employer and the unions representing the employees. . . . The Board has exclusive jurisdiction over minor disputes. Judicial review of the arbitral decision is limited.

*Consol. Rail Corp.,* 491 U.S. at 303-04; *see also Local 1477 United Transp. Union v. Baker*, 482 F.2d 228, 230 (6th Cir. 1973) (if the disputed action of one of the parties can "arguably" be justified by the collective bargaining agreement, it is a minor dispute subject to the National Railroad Adjustment Board).

The conduct for which plaintiff was suspended, and the related investigation and disciplinary process, is covered by Article 41 of the CBA. Therefore, if plaintiff's claims are preempted by the RLA, this dispute is properly characterized as a "minor" dispute, and is subject to the RLA's arbitral process.

Pursuant to the Supreme Court's decision in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994), the preemption analysis for RLA preemption is the same as for § 301 of the LMRA, 29 U.S.C. § 185. In *Hawaiian Airlines,* the Supreme Court adopted the § 301 preemption analysis standard in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988), to resolve claims of RLA preemption. *Hawaiian Airlines*, 512 U.S. at 260.

Because *Hawaiian Airlines* "explicitly equates" *Lingle's* § 301 preemption standard with the RLA preemption standard, the Sixth Circuit applies its interpretation of *Lingle*—articulated in *DeCoe v. Gen. Motors Corp.,* 32 F.3d 212 (6th Cir. 1994)—to RLA preemption issues.[6] *Wellons v. Nw. Airlines, Inc.*, 25 F. App'x 214, 218 (6th Cir. 2001). The basic question in determining whether a state law claim is preempted under the *Lingle* standard is whether the claim is independent of the collective bargaining agreement. *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004).

In *DeCoe*, the Sixth Circuit developed a two-prong test for making this determination:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the

---

[6] Although the Supreme Court in *Hawaiian Airlines* equated the RLA preemption standard with the § 301 preemption standard, RLA preemption is ordinary preemption, and not complete preemption, as is § 301. *See Roddy v. Grand Trunk W. R.R., Inc.,* 395 F.3d 318, 323-326 (6th Cir. 2005).

right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe*, 32 F.3d at 216 (internal citations omitted).

In this case, plaintiff's claims are grounded in state law, not the CBA. Therefore, RLA preemption depends upon whether plaintiff's proof of his state law claims requires interpretation of the CBA. The Ohio law governing plaintiff's claims is set forth in section 4, below, after which the Court will separately analyze each state law claim to determine if it is preempted by the RLA.

### 3. The Federal Employer's Liability Act

Defendants also contend that plaintiff's negligence and intentional infliction of emotional distress claims are preempted by the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51, *et seq*. "FELA is a general negligence statute that provides the exclusive remedy for a railroad employee injured as a result of his employer's negligence." *Crabbe v. Consol. Rail Corp.,* No. 06-12622, 2007 WL 3227584, at *1 (E.D. Mich. Nov. 1, 2007) (internal quotation marks omitted) (quoting *Lane v. R.A. Sims, Jr., Inc.,* 241 F.3d 439, 442 (5th Cir. 2001)); *Garza*, 536 F. App'x at 519 (citing 45 U.S.C. § 51).

Under FELA, a railroad has a duty to provide its employees with a reasonably safe workplace, and causation may be established by showing that the railroad's negligence "played any part in causing the injury." *Garza*, 536 F. App'x at 519 (citing *Van Gorder,* 509 F.3d at 269 and *CSX Transp., Inc. v. McBride,*---U.S.---, 131 S. Ct. 2630, 2641, 180 L. Ed. 2d 637 (2011)). "To prevail on a FELA claim, a plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability,

and causation." *Crabbe*, 2007 WL 3227584, at *1 (internal quotation marks omitted) (quoting *Adams v. CSX Transp., Inc*., 899 F.2d 536, 539 (6th Cir. 1991)).

### 4. Ohio Law

#### a. *Negligent supervision and gross negligence*

Plaintiff advances three claims related to negligent supervision of Patrick, Marotti, and Gaines—Counts 1, 2, and 3. Briefly, plaintiff contends that Patrick was not qualified to supervise him, Marotti and Gaines were not qualified to conduct an investigation regarding a disciplinary matter, and that Norfolk Southern was grossly negligent in supervising the three of them.

To prevail on these claims, plaintiff must show: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) an act or omission by the employer that caused plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *See Estate of Barney v. PNC Bank,* 714 F.3d 920, 929 (6th Cir. 2013) (citing *Lehrner v. Safeco Ins./American States Ins. Co.*, 872 N.E.2d 295, 305 (Ohio Ct. App. 2007)); *Simpkins v. Grace Brethren Church of Delaware*, 16 N.E.3d 687, 701 (Ohio Ct. App. 2014) (citing *Clifford v. Licking Baptist Church,* No. 09 CA 0082, 2010 WL 1254632 (Ohio Ct. App. Mar, 26, 2010)). But first, there is "[a]n underlying requirement in [a negligent supervision] action [] that the employee [must be] individually liable for a tort against [the] person who then seeks recovery from the employer." *Thomas v. Cohr, Inc*., 966 N.E.2d 915, 920 (Ohio Ct. App. 2011) (citing *Strock v. Pressnell*, 527 N.E.2d 1235, 1244 (Ohio 1988)).

#### b. *Defamation*

Plaintiff's defamation claim—Count 4—falls into two categories: (1) against Patrick; and (2) against Norfolk Southern. Within each category, two defamatory statements are alleged.

To succeed on a defamation claim under Ohio law, plaintiff must establish the following: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (quoting *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv.*, 611 N. E. 2d 955, 962 (Ohio Ct. App.1992)).

Even if a statement is false and defamatory, plaintiff cannot prevail if defendants' statements are privileged. The essential elements of privilege are good faith, an interest to be upheld, a statement limited in its scope to persons of common interest, a proper occasion, and publication in a proper manner to proper parties only. *Hahn v. Kotten*, 331 N.E.2d 713, 718-20 (Ohio 1975) (extensively discussing the nature of a privileged statement); *Temethy v. Huntington Bancshares, Inc.*, No. 83291, 2004 WL 528820, at *3-4) (Ohio Ct. App.  Mar. 18, 2004). "Generally, a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege." *Hanly v. Riverside Methodist Hosp.*, 603 N.E.2d 1126, 1131 (Ohio Ct. App. 1991) (citing *Evely v. Carlon Co.,* 447 N.E.2d 1290, 1292-93 (Ohio 1983)); *Contadino v. Tilow*, 589

N.E.2d 48, 52 (Ohio Ct. App. 1990) (alleged defamation in business or professional context subject to qualified privilege) (citing *Evely*, 447 N.E.2d 1290).

Even if a defamatory statement is subject to a qualified privilege, plaintiff may still prevail if plaintiff can establish by clear and convincing evidence that the communication was made with "actual malice."[7] *Knox v. Neaton Auto Prods., Mfg., Inc.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing *Evely*, 447 N.E.2d at 1293)); *Steele v. Oasis Turf & Tree, Inc.*, No. 1:10-cv-769-HJW, 2012 WL 3028514, at *10 (citing *Hahn,* 331 N.E.2d at 718-19). A defendant acts with actual malice when the statement is made "with knowledge that the statements were false or with reckless disregard of whether they are false or not." *Croskey v. Universal Health Servs.*, No. 09 CA 37, 2009 WL 3756701, at *6 (Ohio Ct. App. Nov. 6, 2009) (quoting *Hahn,* 331 N.E.2d 713 at paragraph two of the syllabus); *Jacobs v. Frank*, 573 N.E.2d 609, 614 (Ohio 1991). "To show 'reckless disregard,' a plaintiff must present sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of her publication." *Curry v. Nestle USA, Inc*., 225 F.3d 658, at *6 (Table) (6th Cir. July 27, 2000) (citing *A&B-Abell Elevator*, 651 N.E.2d 1283, 1293 (Ohio 1995)).

### c. *Intentional infliction of emotional distress*

Dean's allegation of intentional infliction of emotional distress revolves around the efforts of Marotti and Gaines to obtain a written statement from him during their investigation the evening of March 5, 2011, and is described in Count 6 as follows:

> 73.    The conduct of Defendant Norfolk Southern representatives J.M. Marotti and N.A. Gains in attempting to coerce Plaintiff Scott D. Dean into providing a written statement and placing Plaintiff Scott D. Dean

---

[7] Actual malice may overcome a qualified privilege, but not an absolute privilege. *Savoy v. Univ. of Akron*, 15 N.E.3d 430, 436 (Ohio Ct. App. 2014) (citations omitted).

under duress *during the investigation of a disciplinary matter* was intended to cause severe emotional distress.

74.     Defendant Norfolk Southern representatives J.M. Marotti and N.A. Gaines knew or should have known that their conduct would cause Plaintiff Scott D. Dean to suffer severe emotional distress.

75.     The conduct of Defendant Norfolk Southern representatives J.M. Marotti and N.A. Gaines was extreme and outrageous, went beyond the bounds of decency and should not be tolerated in civil society.

76.     As a direct and proximate cause of the conduct of Defendant Norfolk Southern representatives J.M. Marotti and N.A. Gaines, Plaintiff Scott D. Dean suffered a psychic or mental injury.

77.     The mental anguish and mental injury suffered by Plaintiff as a result of the conduct of Defendants J.M. Marotti and N.A. Gaines is severe and debilitating.

(Compl. ¶¶ 73-77 (emphasis added).)

To prove intentional infliction of emotional distress in Ohio, plaintiff must show that: (1) Norfolk Southern intended, or should have known, that its actions would result in serious emotional distress; (2) Norfolk Southern's conduct was so extreme and outrageous as to be "beyond all possible bounds of decency" and "utterly intolerable in a civilized community"; (3) the conduct was the proximate cause of his injuries; and (4) the mental anguish suffered by plaintiff is of such a serious nature that "no reasonable man could be expected to endure it." *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio Ct. App. 1983) (internal quotation marks and citations omitted). "Ohio courts have held that a party must act in an extreme and outrageous manner, a manner in which if the story is told would extract the exclamation of 'outrageous!' from a reasonable person." *Hall v. United Labs, Inc.*, 31 F. Supp. 2d 1039, 1044 (N.D. Ohio 1998) (citing *Pyle*, 463 N.E.2d at 103).

With respect to the last element, the mental anguish suffered must be very serious—"beyond trifling mental disturbance, mere upset or hurt feelings." *Paugh v.*

*Hanks*, 451 N.E.2d 759, 765 (Ohio 1983). Rather, the emotional injury must be "both severe and debilitating[]" such that a reasonable person "would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* (citations omitted). "[S]ome examples of serious emotional distress . . . include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id*. (citation omitted).

### d. *Punitive damages*

Plaintiff's final claim—Count 7—is for punitive damages based on actual malice and ill will. In Ohio, "[p]unitive damages are only available when conscious wrongdoing is involved." *Alleman v. YRC*, 787 F. Supp. 2d 679, 684 (N.D. Ohio 2011) (citing *Preston v. Murty*, 542 N.E.2d 1174, 1776 (Ohio 1987)). Conscious wrongdoing requires that the actor "possess knowledge of the harm that might be caused by his behavior." *Id*. Recklessness, carelessness, and ignorance is insufficient to support punitive damages. *See id*.

## B. Analysis

### 1. Federal Railway Act Preemption

Defendants contend on summary judgment that plaintiff's state law claims are inextricably intertwined with the terms of the CBA and with the rights and responsibilities of Norfolk Southern pursuant to the CBA. As a consequence, defendants argue that, because the CBA must be interpreted to determine whether Patrick and Norfolk Southern's actions were appropriate, plaintiff's state law claims are preempted by the RLA.

There is no dispute that the CBA governs Dean's employee-employer relationship with Norfolk Southern, including Norfolk Southern's right to manage its business and to maintain discipline of its employees, and the disciplinary process and procedures. (Dean Dep. at 274-78; Lewis Aff. ¶¶ 5-7.) Article 41 of the CBA—Discipline and Procedures—governed the entire process flowing from the events of March 5, 2011, including Norfolk Southern's investigation,[8] Dean's suspension,[9] Norfolk Southern's formal charges against Dean and notice of hearing,[10] and Dean's waiver of a formal hearing and acceptance of responsibility.[11]

Plaintiff's claims for defamation, negligent supervision, and intentional infliction of emotional distress are based on Ohio law. Therefore, whether these claims are preempted by the RLA depends upon whether the CBA must be interpreted in order for plaintiff to establish the various elements of proof for these claims. If the answer is "yes," then preemption is appropriate.

### a. *Defamation*

In Count 4, plaintiff claims that Patrick made false and misleading statements about him, and that Norfolk Southern republished those statements without first attempting to determine the truth of those statements. Plaintiff does not specify particular statements in Count 4, but in opposing defendants' motion, plaintiff identifies

---

[8] Section 41(B)(1)(d) provides that: "[Nolfolk Southern] will have the responsibility of producing sufficient witnesses to develop the facts concerning the incident or occurrence being investigated . . .." (CBA at 460.)

[9] Article 41(A)(2) permits Norfolk Southern to remove an engineer from service pending a formal hearing in serious cases, including altercation, insubordination, serious misconduct and major offenses. (CBA at 459; Lewis Aff. ¶¶ 8, 14.)

[10] Section 41(B)(1) provides the requirements for notice of hearing and the cause therefor. (CBA at 459; Notice Letter; Lewis Aff. ¶ 15; Marotti Aff. ¶ 25.)

[11] Section 41(A)(1) provides that an engineer may [agree] to waive a formal hearing and [accept] responsibility and the discipline issued in connection therewith." (CBA at 459; Accept. of Resp.)

the defamatory statements as two sentences in Patrick's written statement prepared the evening of March 5, 2011 at Marotti's request,[12] Norfolk Southern's publication of those statements, and inter-company computer notices generated the evening of March 5, 2011 by Norfolk Southern indicating that plaintiff was out of service.

In order to prove his defamation claim under Ohio law, plaintiff must begin by establishing that Patrick and Norfolk Southern's statements are false *and* unprivileged. *Akron-Canton Waste Oil,* 611 N.E.2d at 962. The statements at issue were made in the context of the investigation and disciplinary process governed by Article 41 of the CBA regarding the events of March 5, 2011, and plaintiff does not allege that any of the statements were made outside of that context. Therefore, even if the statements at issue are false, in order to determine whether the statements were privileged, the actions of Patrick and Norfolk Southern must be interpreted in the context of their rights, duties, and responsibilities under the CBA. *DeCoe*, 32 F.3d at 216-18 (defamation claim preempted because interpretation of bargaining agreement required to identify duties of defendant to determine if alleged defamatory statement was unprivileged); *Farmer v. General Mills*, Case No. C-1-05-100, 2005 WL 1705090 (S.D. Ohio July 20, 2005) (defamation claim under Ohio law preempted by § 301 because examination of the collective bargaining agreement required to determine whether defendant had a qualified privilege to communicate information about the alleged theft); *Potts v. Wilson*, 54 F. App'x 190, 191-92 (6th Cir. 2002) (Ohio defamation claim preempted by § 301 because proof of claim requires interpretation of the collective bargaining agreement and the parties' relationships under that agreement); *Fitzgerald v. Roadway Express*, 262 F.

---

[12] "He frightened me when he got out of his seat and came at me. He was in a rage." Opp'n at 526 (citing

Supp. 2d 849, 856-57 (N.D. Ohio 2003) (Ohio defamation claim preempted by § 301 because must examine rights and responsibilities of Roadway and individual defendants under the bargaining agreement to determine whether publication was privileged); *see also Henegar v. Banta*, 27 F.3d 223, 226-27 (6th Cir. 1994) (abrogated on other grounds) (defamation claim regarding alleged false report of work-related injury made in course of investigation and hearing conducted pursuant to the bargaining agreement is preempted by the RLA, and would also be preempted by § 301, because bargaining agreement must be interpreted to determine whether defendant's statement was privileged).

Plaintiff advances two arguments in opposition to preemption of his defamation claim by the RLA. First, citing *Hahn v. Rauch*, 602 F. Supp. 2d 895 (N.D. Ohio 2008), plaintiff argues that his defamation claim cannot be preempted "solely upon the Defendant's argument that the collective bargaining agreement would be involved in determining whether the false statements were privileged." (Opp'n at 528.) But *Hahn* is readily distinguished from the instant action on the facts and procedural posture, with the most relevant distinction being that Hahn's employment with the local was not subject to a collective bargaining agreement.[13]

---

Doc. 18-4 [Patrick Aff.—Ex. 1 ["Patrick Statement"]] at 225); *see also* Patrick Aff. ¶ 19; Marotti Aff. ¶ 17.

[13] In *Hahn*, plaintiff was employed by a local of an international union in several capacities, including as the secretary-treasurer of the local's apprenticeship fund. Among other claims, plaintiff asserted that defendant defamed him by stating that plaintiff's driver's license had been revoked and that plaintiff was responsible for expenditures from the fund and the local that were not accounted for. *Hahn*, 602 F. Supp. 2d at 901. Hahn's state court case was removed to federal court on the basis of preemption under § 301 of the LMRA, and Hahn moved to remand, arguing lack of complete preemption. Defendants raised three arguments in support of complete preemption: (1) resolution of plaintiff's claims required application and interpretation of the union constitution; (2) plaintiff's defamation claim raised issues relating to privilege; and (3) resolution of his claim relating to his driver's license also required interpretation of the constitution. All three arguments were rejected by the court under the particular facts of that case. Unlike this case, Hahn's employment with the local was not subject to a collective bargaining agreement.

In granting plaintiff's motion to remand, the court recognized that preemption and removal are related but distinct concepts, distinguishing between complete preemption, which supports removal, and

Unlike *Hahn*, plaintiff's employment in this case *is* subject to a collective bargaining agreement. Dean's defamation claim rests upon statements made by Norfolk Southern management in the context of an investigation by Norfolk Southern pursuant to the CBA's disciplinary process and procedures. Also unlike *Hahn*, the question of privilege in this case is not merely tangential, but is intertwined with Norfolk Southern's rights, duties and obligations under the terms of the CBA. For example, pursuant to Article 41, Norfolk Southern had a duty to investigate and develop facts regarding the incident at issue. Whether Patrick and Norfolk Southern's statements were privileged is substantially dependent upon an interpretation of the parties' respective rights, duties, and obligations under the CBA.

Dean's second argument opposing RLA preemption of his defamation claim is that, because he has alleged that the statements were made with actual malice or reckless disregard of the truth, preemption is precluded. This argument misconstrues the proof of a defamation claim. To prevail on a defamation claim, plaintiff must establish that defendants' statements are both false and unprivileged. Actual malice is not "a substitute for alleging that defendants' statements were unprivileged; rather, plaintiff can allege actual malice only if necessary to overcome the defendants' qualified privilege." *Fitzgerald*, 262 F. Supp. 2d at 856 (the issue of actual malice does not arise unless

---

ordinary preemption, which does not. *Hahn*, 602 F. Supp. 2d at 902 (quoting *Tisdale v. United Ass'n of Journeymen & Apprentices of the Plumbing and Pipefitting Indus. of the U.S. & Canada, Local 704*, 25 F.3d 1308, 1310 (6th Cir. 1994) (quoting *Caterpillar v. Williams*, 482 U.S. 386, 398, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987))). The court's analysis in *Hahn* revolved around the question of complete preemption under § 301, which supports removal. Unlike *Hahn*, the instant action involves ordinary preemption under the RLA. Ordinary preemption does not deprive the court of subject matter jurisdiction, but goes to the court's ability to reach the merits of plaintiff's claim and grant relief. *Emswiler v. CSX Transportation*, 691 F.3d 782, 790 (6th Cir. 2012).

defendants possessed a qualified privilege, which cannot be determined without interpreting the contract).

In this case, it is not possible to determine if the statements of Patrick, Marotti, and Gaines are privileged without evaluating the respective rights and responsibilities of Norfolk Southern and the individual defendants under the terms of the CBA. Because the issue of privilege is an element of proof of a defamation claim and, in this case, is dependent upon an interpretation of the CBA, the Court concludes that the plaintiff's defamation claim is preempted by the RLA. *See Hawaiian Airlines*, 512 U.S. at 266; *Emswiler*, 691 F.3d at 790; *see also Fitzgerald*, 262 F. Supp. 2d at 856 ("plaintiff's allegation of malice cannot help him state a claim for defamation.").

### b. *Intentional infliction of emotional distress*

Plaintiff alleges that, on the evening of March 5, 2011, Marotti and Gaines attempted to coerce him into providing a written statement regarding the incident with Patrick. This interaction, which plaintiff himself states took place "during the investigation of a disciplinary matter," forms the basis for his claim for intentional infliction of emotional distress. (Compl. ¶ 73.) Plaintiff has not opposed the preemption of this claim by the RLA. (*See* Opp'n.)

In order to prevail on this claim under Ohio law, plaintiff must prove that the conduct of Marotti and Gaines was extreme and outrageous, "beyond all possible bounds of decency," and "utterly intolerable in a civilized community." *Pyle*, 463 N.E.2d at 103. Whether Norfolk Southern acted outrageously requires an interpretation of Norfolk's rights and responsibilities under the CBA, which governed the investigative and disciplinary process surrounding the charges against plaintiff. *Fitzgerald*, 262 F.

Supp. 2d at 858 (claims of intentional infliction of emotional distress based on statements made by supervisors during disciplinary proceedings pursuant to a collective bargaining agreement generally requires interpretation of the agreement to determine whether the statements were outrageous) (citing *Garley v. Sandia Corp.,* 236 F.3d 1200, 1214 (10th Cir. 2001) (other citations omitted)). "The Sixth Circuit stated [that] a defendant has not acted outrageously where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence was certain to cause emotional distress." *Fitzgerald*, 262 F. Supp. 2d at 859 (internal quotation marks omitted) (quoting *DeCoe*, 32 F.3d at 219); *Mattis*, 355 F.3d at 908 (quoting *DeCoe*, 32 F.3d at 219).

Plaintiff's proof of his intentional infliction of emotional distress claims is dependent upon an interpretation of the parties' respective rights and responsibilities under the CBA. Therefore, the Court concludes that plaintiff's intentional infliction of emotional distress claim is a "minor dispute" preempted by the RLA.

### c. *Negligent supervision*

Plaintiff's claims in Counts 1, 2 and 3 revolve around the qualifications of Patrick to supervise plaintiff, and of Marotti and Gaines to investigate the disciplinary process triggered by the events of March 5, 2011. In opposing defendants' argument for preemption of plaintiff's negligence claim as to Patrick, plaintiff maintains that: "Scott Dean's complaint holds Norfolk Southern Railway Company vicariously liable for the defamatory statements based upon its failure to properly train and supervised [sic] M. Rita Patrick." (Opp'n at 529-30.) Plaintiff does not oppose RLA preemption of his negligent supervision claim as to Marotti and Gaines. (*See* Opp'n.)

20

Proof of a negligent supervision claim in Ohio rests upon proof of an underlying tort. *Thomas,* 966 N.E.2d at 920. The Court has already concluded that plaintiff's defamation and intentional infliction of emotional distress claims are preempted by the RLA because analysis of the elements of their proof is dependent upon the CBA, requiring interpretation of the parties' respective rights and responsibilities pursuant to that controlling agreement. By the same reasoning, therefore, plaintiff's negligent supervision claims are also preempted.

Even assuming proof of an underlying tort, in order to prove a negligent supervision claim as to Marotti and Gaines, plaintiff must first establish that Marotti and Gaines were unqualified to investigate the events of March 5, 2011. In order to evaluate their conduct and determine if they were incompetent, the rights of management, and the disciplinary process pursuant to the CBA, must be interpreted. Because the CBA controls the employee-employer relationship in this case, the same analysis applies to plaintiff's negligent supervision claim as it relates to Patrick's qualifications as a supervisor, and whether her allegedly defamatory statement in the context of the investigation was privileged. As summed up in another case, "[m]ost elements of [a negligent hiring, retention and supervision] claim make reference in some way to the employer-employee relationship . . . [and] [t]he employer-employee relationship in this case is governed entirely by the CBA. There is no way to apply these elements to the facts of this case without interpreting the CBA." *Bradshaw v. Goodyear Tire &  Rubber Co.,* 485 F. Supp. 2d 821, 830 (N.D. Ohio 2007).

Because plaintiff's proof of his negligent supervision and gross negligence claims requires an interpretation of the CBA, those claims are minor disputes preempted by the RLA.

### 2. FELA Preemption

Defendants also contend on summary judgment that plaintiff's negligent supervision, gross negligence, and intentional infliction of emotional distress claims are preempted by FELA.[14] The Court disagrees.

The negligent supervision claims in Counts 1 and 2, and gross negligence claim in Count 3, revolve around plaintiff's allegations that Patrick, Marotti, and Gaines were not qualified to perform supervisory and investigatory functions. Plaintiff claims that, as a consequence of their incompetence, he was injured and suffered damages, and that Norfolk Southern is liable because of its negligent supervision of these employees. (Compl. ¶¶ 47-62.)

Under FELA, "[r]ailroad employees [are] able to recover for injuries—physical and emotional—caused by the negligent conduct of their employers that threatens them imminently with physical impact." *Lukowski v. CSX Transp.* 416 F.3d 478, 482 (6th Cir. 2005) (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 556, 114 S. Ct. 2396, 129 L .Ed. 2d 427 (1994)). But plaintiff does not contend that he suffered physical injury, feared physical injury, or was within a "zone of danger" as a result of Norfolk Southern's alleged negligence. Plaintiff's negligence claims are not preempted by FELA.

---

[14] The Court assumes that defendants make their preemption arguments in the alternative as FELA claims are not preempted by the RLA. See *Gemmell v. Consol. Rail Corp.*, Civ.A.No. 2:89-1066, 1991 WL 117336, at *5 (S.D. Ohio Apr. 12, 1991) (citing *Atchison T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 107 S. Ct.

Plaintiff's intentional infliction of emotional distress claim in Count 6 is grounded in the investigation conducted by Marotti and Gaines. Dean contends that during the investigation, Marotti and Gaines attempted to coerce plaintiff into providing a written statement and placed plaintiff under duress, causing plaintiff to suffer "a psychic or mental injury." (Compl. ¶¶ 73-77.)

Although FELA is a general negligence statute, recovery is allowed under FELA for intentional torts that inflict bodily harm. *Adams*, 899 F.2d at 539 n.6 ("Although the Supreme Court has extended FELA to intentional torts such as assault, the FELA has not been applied to any intentional torts lacking any physical dimension." (internal quotation marks and citations omitted)). But "a claim for intentional infliction of emotional distress is not cognizable under FELA." *Adkins v. Seaboard System R.R.*, 821 F.2d 340, 342 (6th Cir. 1987) (citing *Antalek  v. Norfolk and Western Railway Co.*, 1984 U.S. App. LEXIS 13981, 742 F.2d 1454  (Table) (6th Cir. Aug. 30, 1984)); *Adams*, 899 F.2d at 539 ("refusal to recognize a FELA claim for intentional infliction of emotional distress stemmed from FELA's restrictions to actions based on an employer's negligence"). Plaintiff's intentional infliction of emotional distress claim is not preempted by FELA.

### 3. Merits of Ohio State Law Claims

Defendants alternatively argue in the motion that even if plaintiff's claims are not preempted by the RLA or FELA, no reasonable jury could find in favor of plaintiff on the merits of his state claims under Ohio law,[15] and summary judgment is

---

1410, 94 L. Ed. 2d 563 (1987)).

[15] "A federal court sitting in diversity applies the substantive law of the state in which it sits." *Lukowski*, 416 F.3d at 484 (internal quotation marks and citations omitted.)

warranted. Although the Court has concluded that plaintiff's claims are preempted by the RLA, the Court will also consider defendants' alternative arguments on the merits of plaintiff's claims.

### a. Defamation

Dean attributes two defamatory statements each to Patrick and Norfolk Southern. As to Patrick, Dean contends that a portion of her written statement, prepared at Marotti's request the evening of March 5, 2011—"He frightened me when he got out of his seat and came at me. He was in a rage."—is defamatory. (Opp'n at 526 (quoting Patrick Statement).) Although not addressed by plaintiff in his opposition to defendants' motion, Dean's complaint also asserts that a statement by Patrick in plaintiff's July 27, 2010 evaluation—that plaintiff did not comply with the requirement that an engineer have his certification card in his possession at all times when operating his locomotive— was false and defamatory. (Compl. ¶ 6; Dean Dep. at 68-75; Doc. 19-1 [Dean Dep.—Ex. 6 ["July 2010 Eval."]] at 474-77.)

As to Norfolk Southern, plaintiff alleges that (1) Marotti and Gaines republished the allegedly defamatory statement in Patrick's written statement; and (2) Norfolk Southern published computer reports that plaintiff was taken out of service in connection with the events of March 5, 2011, with no attempt to determine the truth of Patrick's statement or with reckless disregard for the truth. (Compl. ¶ 36.)

### (i) Patrick's statements

Plaintiff's defamation claim against Patrick fails because the statements are true or a matter of opinion, and, even if the statements are false, plaintiff has advanced no evidence that the statements were unprivileged.

*July 2010 evaluation*

There is no genuine dispute that both federal law and Norfolk Southern's operating rules require a locomotive engineer to have his certification card in his possession at all times when operating a locomotive, even if that operation is confined to yard work. To establish this fact, defendants advance the affidavit of Charles McAnany. (Doc. No. 18-3 [Affidavit of Charles L. McAnany, Jr. ["McAnany Aff."]] ¶¶ 4-8.) Norfolk Southern's operating rule 610 contains the same requirement as the federal rule, 49 C.F.R. § 2140.305(b). (*Id.* ¶ 7.) Operating rule 610 was in effect at least as early as May 1, 2008. (Doc. 19-1 [Dean Dep.—Ex. 10 ["Op. Rules"]] at 484-92.) Dean testified at his deposition that he has a copy of the 2008 operating rules, which includes rule 610, and is familiar with them. (Dean Dep. at 323-24.)

Plaintiff does not dispute that, at the time of his evaluation by Patrick in July 2010, he did not have his certification card in his possession. Dean's basis for claiming that Patrick's July 2010 evaluation is false is that the rule used to be different. (Dean Dep. at 301-310.) Defendants agree with plaintiff that, at one time, engineers working only in the yard were required to have their certification card on the premises, but not in their possession. But Norfolk Southern discontinued that practice when a federal inspector took issue with it, and operating rule 610 has been in effect since at least May 1, 2008—more than two years before Dean's 2010 evaluation. (McNany Aff. ¶ 9; Op. Rules at 489-90.)

Plaintiff has not advanced any evidence that creates a genuine dispute of material fact as to certification card requirements in July 2010. Plaintiff admits that he did not have the card in his possession that day, and there is no genuine dispute that

Patrick's evaluation of Dean in July 2010 on that issue is a true statement. There is also no dispute that Patrick found no other deficiency in Dean's performance, and gave plaintiff an overall rating of 95%. (Patrick Aff. ¶ 11; July 2010 Eval.) In light of the undisputed record, plaintiff's personal view of what the rule requires, or used to be, is insufficient to create a genuine issue of material fact regarding the truth of Patrick's statement in plaintiff's evaluation in July 2010, and no reasonable jury could find in favor of plaintiff on that basis.

Even if Patrick's performance evaluation of plaintiff on that date were a false statement, defendant has advanced no evidence that Patrick's supervisory evaluation of plaintiff was unprivileged. *Contadino*, 589 N. E. 2d at 52 (alleged defamation in business or professional context subject to qualified privilege) (citing *Evely*, 447 N.E.2d 1290).

*March 5, 2011 written statement*

The second prong of plaintiff's defamation claim as to Patrick is her written statement: "He frightened me when he got out of his seat and came at me. He was in a rage."[16] The first element of a defamation claim is a false and defamatory statement. The false statement must be one of fact, not opinion. *Mehta v. Ohio Univ.*, 958 N.E.2d 598, 607-08 (Ohio Ct. App. 2011).

To determine whether a statement is one of fact or opinion, Ohio courts apply a totality-of-the-circumstances analysis and consider four factors: (1) the specific language used; (2) whether the statement is verifiable; (3) general context of the

---

[16] Plaintiff admits that he was "unhappy" with Patrick, and that he rose from his seat in the locomotive cabin, which is approximately 6 feet by 8 or 9 feet, and moved to within a "foot or two" of her. Plaintiff testified that he did so in order to set the engine brake, which was behind Patrick, in preparation for being

statement; and (4) broader context in which the statement appeared. *Id.* at 608-12 (citing *Scott v. News-Herald*, 496 N. E. 2d 699, 706 (Ohio 1986)); *Sturdevant v. Likely*, No. 12CA0024-M, 2013 WL 1096176 (Ohio Ct. App. Mar. 18, 2013) ("The court 'must determine whether a reasonable listener would view the words used to be language that normally conveys information of a factual nature or hype and opinion.'" (quoting *Vail v. The Plain Dealer Publ'ng Co.*, 649 N.E.2d 182, 186 (Ohio 1995))).

Patrick's statement that she was frightened, and that plaintiff was in a rage, describes her own emotional state and her perception of plaintiff's emotional state. One individual's emotional reaction to a particular situation may be entirely different from the emotional reaction of another. In a similar fashion, one individual's perception of the emotional state of another person is subjective, and may be perceived differently by different individuals. Patrick's description of her emotional state, and her perception of plaintiff's emotional state, is not verifiable. *Stohlmann v. WJW TV, Inc.*, No. 86491, 2006 WL 3518121 at *8 (Ohio Ct. App. Dec. 7, 2006) (statements revolving around subjective emotions are unverifiable statements of opinion; what is "tragic" to one person may not be "tragic" to another, therefore it is an opinion).

Even if Patrick's written statement was of fact and not opinion, and even if that statement is false, Patrick's statement was made at the request of her supervisor in the context of the CBA's investigation and disciplinary process, and plaintiff has advanced no evidence that her statement was made outside of that process or is otherwise unprivileged. *See Hanly*, 603 N.E.2d at 1131; *Temethy*, 2004 WL 528820, at *4)

---

sent home. (Dean Dep. at 307, 340-42.)

(statements made at the request of supervisor are privileged); *Contadino*, 589 N.E.2d at 52 (alleged defamation in business or professional context subject to qualified privilege).

### *(ii) Norfolk Southern's statements*

Plaintiff's defamation claim against Norfolk Southern fails because the statements are true or a matter of opinion, and even if the statements are false, the statements are privileged.

#### *Patrick's March 5, 2011 written statement*

Plaintiff alleges that Marotti and Gaines defamed him by repeating Patrick's written statement regarding plaintiff's conduct on March 5, 2011. The Court's analysis of Patrick's statement, *supra*, applies equally to plaintiff's allegation against Marotti and Gaines. Even if Patrick's statement was a fact and not an opinion, and even if it was false, any publication of that statement by Marotti and Gaines was made within the investigation and disciplinary process governed by the CBA. Plaintiff has advanced no evidence that defendants' statements are unprivileged.

#### *Computer reports*

Plaintiff also claims that he was defamed by Norfolk Southern when it "broadcast throughout the Company, via its computer reports, that Scott Dean had been pulled out of service[,]" and the reports were issued without any investigation, and with reckless disregard, as to whether Patrick's statement was false or not. (Opp'n at 531.)

Plaintiff does not dispute that he was taken out of service on March 5, 2011. (Dean Dep. at 358-60.) While plaintiff has introduced no record evidence of the computer reports, even assuming there are such reports, the statement that Dean was out of service was true. Because the reports do not contain not a false statement of fact,

plaintiff cannot prove the first element of his defamation claim regarding his service status.

### (iii) *Actual malice*

In order to prove a defamation claim in Ohio, plaintiff must prove the statements were false and unprivileged. Even if false, plaintiff has advanced no evidence that Patrick and Norfolk Southern's statements were unprivileged, and the Court has concluded that the statements are privileged under Ohio law.

Plaintiff's primary argument to overcome summary judgment on his defamation claim is that the statements were made with actual malice. Even false statements of fact protected by privilege can be overcome if plaintiff can establish by clear and convincing evidence that the communication was made with "actual malice." *Knox*, 375 F.3d at 460 (citing *Evely*, 447 N.E.2d at 1293)); *Steele*, 2012 WL 3028514, at *10 (citing *Hahn,* 331 N.E.2d at 718-19).

In support of his argument that Patrick acted with actual malice, plaintiff offers the affidavits of Aaron Brown,[17] David Quinn,[18] and Mike Rice.[19] But these affidavits contain nothing more than conclusory personal opinions, and do not establish a genuine dispute of material fact as to whether Patrick acted with actual malice toward

---

[17] "[Patrick] would target individuals and try to get employees under her supervision in trouble. Rita Patrick had a reputation for going after people. If Rita Patrick became upset at someone, then she would try to get that person in trouble. [Patrick] was obnoxious in trying to get employees under her supervision in trouble." (Doc. No. 23 [Affidavit of Aaron Brown] ¶ 4-7.)

[18] "While Rita Patrick did not come out and say that she disliked Scott Dean, I could tell by the way she spoke of Scott Dean, such as asking what's wrong with him, that she definitely did not care for Scott Dean." (Doc. No. 24 [Affidavit of David Quinn] ¶ 19.)

[19] "Whenever Scott Dean's name was mentioned I would observe Rita Patrick roll her eyes, indicating that she did not care for Scott Dean. I was present when Rita Patrick was asked if she knew Scott Dean, and she stated 'I know all about Scott Dean' in a tone that indicated that she did not care for Scott Dean." (Doc. No. 22 [Affidavit of Mike Rice] ¶¶ 9-10.)

Dean in her written statement the evening of March 5, 2011, or in plaintiff's July 2010 evaluation. *Lujan,* 497 U.S. at 888. At best, these affidavits may establish a genuine dispute as to whether Patrick disliked plaintiff. But even construed in a light most favorable to plaintiff, that fact is legally insufficient to raise a genuine dispute of fact as to whether Patrick acted with malice. *Temethy,* 2004 WL 528820, at *4 (admission that employee disliked plaintiff does not demonstrate malice).[20]

It is also worth noting that plaintiff does not dispute that he has been evaluated by Patrick four times. In three of the evaluations, plaintiff received a score of 100%, and in one evaluation, plaintiff received a score of 95%. (Dean Dep. at 295-97, 302, 304, 319.) In addition, Patrick provided plaintiff with an opportunity to serve on a Norfolk Southern safety committee, which plaintiff declined. (Marotti Aff. ¶ 26; Dean Dep. at 285-86.)

Based on the undisputed facts in the record and the conclusory affidavits of Brown, Rice, and Quinn that Patrick disliked plaintiff, there is no genuine dispute from which a reasonable jury could conclude that plaintiff has established by clear and convincing evidence that Patrick acted with actual malice toward plaintiff.

Plaintiff also argues that defendant Norfolk Southern acted with actual malice toward plaintiff because the computer reports that he was out of service were published with reckless disregard and without investigating whether Patrick's statements regarding plaintiff's conduct the evening of March 5, 2011 were true. Dean's allegation is

---

[20] In addition, plaintiff claims that Patrick exaggerated her statement the evening of March 5, 2011, demonstrating that Patrick acted with malice. According to the Merriam-Webster Online Dictionary, "exaggerate" means to think of or describe something as larger or greater than it really is. However, plaintiff admits that he swore at Patrick, was upset, and rose abruptly to move toward Patrick in the small confines of the locomotive cabin. Under these undisputed circumstances, no reasonable jury could find that Patrick's statement of opinion was an exaggeration establishing actual malice.

entirely without merit and no reasonable jury could find otherwise based on the undisputed facts of this case.

There is no dispute that Marotti and Gaines immediately investigated Patrick's report regarding Dean's conduct, and Dean himself was interviewed as part of that investigation. Further, Dean was taken out of service not only because of Patrick's allegations, but also because of his own conduct toward Marotti during the investigation. (Lewis Aff. ¶¶ 13-14.)

Based on the undisputed facts in the record, the Court concludes that no reasonable jury could find that Patrick or Norfolk Southern made a false statement regarding Dean, that the statements were unprivileged, or that they acted with actual malice toward Dean. The Court therefore concludes that, even if plaintiff's defamation claim were not preempted by the RLA, defendants are entitled to judgment as a matter of law on that claim in Count 4.

**b.** *Intentional infliction of emotional distress*

When Marotti and Gaines conducted their investigation the evening of March 5, 2011, Marotti asked Dean for a written statement, as he had asked Patrick and Johnson. Initially, plaintiff refused, responding to Marotti that he did not have to give a statement. (Dean Dep. at 346-47.) But Marotti instructed plaintiff to provide a written statement and, after that instruction, plaintiff pointed his finger at Marotti and said "'if I lose one minute of work over this, its [sic] going to get pretty f***ing ugly' or words to that effect." (Marotti Aff. ¶ 18-19.) Plaintiff admits "I may have said that, yes." (Dean Dep. at 354-55.)

After first refusing to give a statement, plaintiff submitted the following written statement: "I came to work at 5:00 p.m. The Road Foreman came on my engine and threatened to write me up for not having my engineer's license on me. Then she left." (Doc. No. 19-1 [Dean Dep.—Exs. 12 and 13 ["Dean's Statements"]] at 496-97; Dean Dep. at 350, 357.) Plaintiff's interview by Marotti and Gaines during their investigation, and request for a statement regarding plaintiff's description of the events,[21] is the basis for plaintiff's claim for intentional infliction of emotional distress.

Defendants contend that they are entitled to summary judgment on this claim because, even if it is true that Marotti and Gaines attempted to coerce plaintiff into providing a written statement, their conduct is not so extreme or outrageous as to constitute intentional infliction of emotional distress under Ohio law, and even if it were, plaintiff has not suffered the type of emotional distress required to support the claim. Plaintiff's opposition to defendants' motion for summary judgment is silent on this claim.

Plaintiff's own description of his interview by Marotti and Gaines is devoid of anything that would suggest the kind of extreme and outrageous conduct required by Ohio law to support a claim for the intentional infliction of emotional distress. (Dean Dep. at 346-58.) *Hall,* 31 F. Supp. 2d at 1044 ("Ohio courts have held that a party must act in an extreme and outrageous manner, a manner in which if the story is told would extract the exclamation of 'outrageous!' from a reasonable person."). Further, even if Marotti and Gaines knew that their request for a statement would cause plaintiff distress, Norfolk Southern was entitled investigate Patrick's allegations regarding plaintiff's conduct and performance. *See Vitanza v. First. Nat'l Supermarkets, Inc.,*

---

[21]  "[H]e told me to tell him what happened." (Dean Dep. at 346.)

Cuyahoga App. No. 62906, 1993 WL 226576, at *9-10 (Ohio Ct. App. June 24, 1993) (employer's haphazard investigation of employee pilfering not outrageous as employer had legal right to terminate at-will employee); *Neal v. Hamilton Cty.*, 622 N.E.2d 1130, 1137 (Ohio Ct. App. 1993) (employer's actions taken according to personnel manual for purpose of assuring payroll office ran efficiently were not outrageous or intended to cause emotions distress).

Finally, plaintiff's own testimony reveals that he has not suffered the kind of severe and debilitating emotional distress from this encounter that is required to support an intentional infliction of emotional distress claim. In fact, plaintiff testified that his overall health for the last five years was excellent, that he has not missed more than three consecutive days of work in the last five years for health reasons, and has not taken a prescription drug in the last three years. (Dean Dep. at 261-62.) In addition, plaintiff was never treated by a psychiatrist or psychologist, except for marriage counseling many years before. (Dean Dep. at 264-65.) Plaintiff did see a general practitioner in 2011 for "work stress" and "poor sleep cycle" (although possibly related to the shifts he was working) and the doctor prescribed sleeping pills, which plaintiff did not take. (Dean Dep. at 262-64).

Based on the undisputed record, no reasonable jury could conclude that the conduct of Marotti and Gaines rose to the level of extreme and outrageous conduct that went beyond all bounds of human decency so as to be utterly intolerable in a civilized society, or that plaintiff suffered the kind of emotional distress that made him unable to cope or function as a consequence. Accordingly, even if plaintiff's claim were not preempted by the RLA, the Court would find that defendants are entitled to judgment

as a matter of law on plaintiff's claim in Count 6 for intentional infliction of emotional distress.

### c. *Negligent supervision/gross negligence*

In Count 1, plaintiff alleges that Norfolk Southern negligently supervised Patrick and should have known that she was unqualified to supervise plaintiff, and in Count 2, alleges that Norfolk Southern negligently supervised Marotti and Gaines and should have known that they were "unqualified to hold a position involved in conducting investigations of disciplinary matters." Finally in Count 3, plaintiff claims that Norfolk Southern's negligence as alleged in Counts 1 and 2 was reckless, and in willful disregard for plaintiff's safety. (*See* Compl. ¶¶ 47-62.)

Plaintiff's opposition to defendants' motion for summary judgment is silent as to his allegations regarding Marotti and Gaines. With respect to Patrick, plaintiff argues that Norfolk Southern knew or should have known that Patrick's allegations against him were exaggerated, and made no attempt to supervise Patrick, but allowed her to maintain a position of authority where she could continue to defame employees under her supervision. (Opp'n at 529.)

A threshold requirement in Ohio for a negligent supervision claim is that the employee is liable for some tort against plaintiff, who then seeks recovery from the employer. *Strock*, 527 N.E.2d at 1244; *Thomas*, 966 N.E.2d at 920 (citing *Strock*). The Court has concluded that even if plaintiff's claims were not preempted by the RLA, defendants would be entitled to summary judgment on plaintiff's claims for defamation and intentional infliction of emotional distress. Without an underlying tort as to Patrick, Marotti, or Gaines, plaintiff's negligent supervision claims fail as a matter of law.

Accordingly, the Court concludes that there is no genuine dispute of material fact, and that no reasonable jury could find in favor of plaintiff, with respect to his negligence claims. Therefore, if plaintiff's negligent supervision and gross negligence claims are not preempted by the RLA, the defendants are entitled to summary judgment on these claims as a matter of law.

### d. *Punitive damages*

Finally, defendants contend that they are entitled to summary judgment on plaintiff's punitive damages claim because plaintiff cannot succeed on a cause of action that would support an award of punitive damages. Plaintiff offered no opposition to defendants' motion for summary judgment on this claim. (*See* Opp'n.)

In Ohio, "proof of actual damages in an underlying cause of action is a necessary predicate for an award of punitive damages." *Moskovitz v. Mt. Sinai. Med. Ctr.*, 635 N.E.2d 331, 342 (Ohio 1994). For the reasons contained herein, the Court has concluded that plaintiff's claims are preempted by the RLA, and if they are not, defendants are entitled to summary judgment as a matter of law on the merits of plaintiff's defamation, negligence, and intentional infliction of emotional distress claims. In the absence of an underlying liability upon which to base punitive damages, plaintiff's punitive damages claim fails as a matter of law.

### III. CONCLUSION

For the reasons contained herein, the Court finds as a matter of law that plaintiff's state law claims in this case are preempted by the RLA. The Court further finds that, even if plaintiff's claims were not preempted by the RLA, defendants would be entitled to judgment as a matter of law on the merits of plaintiff's state law claims. Accordingly, defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: March 27, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**